Lisa WARRICK, Administratrix of the Estate of Julian Michael Warrick, Deceased, Individually and on Behalf of the Decedent's Estate and Demetrius Warrick, a minor, by his Mother and Natural Guardian, Lisa Warrick and Julius Warrick, Appellants,

v.

PRO COR AMBULANCE, INC., and Pai Liquidating Corporation and Careline Delaware Valley, Inc. and Brian Tuck and Southeastern Pennsylvania Transportation Authority.

Lisa WARRICK, Administratrix of the Estate of Julian Michael Warrick, Deceased, Individually and on Behalf of the Decedent's Estate and Demetrius Warrick, a minor, by his Mother and Natural Guardian, Lisa Warrick and Julius Warrick, Appellants,

v.

PRO COR AMBULANCE, INC., and Pai Liquidating Corporation and Careline Delaware Valley, Inc. Individually and d/b/a Pro Cor Ambulance and Lifeline Ambulance Systems and Frederick D. Kroon and Frances Kelley and Brian Tuck and Southeastern Pennsylvania Transportation Authority.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 7, 1997.
Decided Nov. 21, 1997.
Publication Ordered Feb. 20, 1998.

Thomas Bruno, II, Philadelphia, for appellants.

Joan A. Zubras, Philadelphia, for appellee, SEPTA.

Before McGINLEY and FRIEDMAN, JJ., and NARICK, Senior Judge.

FRIEDMAN, Judge.

Lisa Warrick (Warrick), administratrix of the Estate of Julian Michael Warrick, deceased, appeals from a decision of the Philadelphia Court of Common Pleas (trial court) entering summary judgment in favor of Southeastern Pennsylvania Transportation Authority (SEPTA) and against Warrick.

On March 11, 1994, five-year-old Julian Warrick and his eleven-year-old brother, Demetrius Warrick, were returning home from school on a SEPTA bus. The bus discharged Julian and Demetrius at the intersection of 33rd and Spring Garden Streets in Philadelphia, rather than at the designated bus stop located in the middle of the block on Spring Garden Street between 33rd and 34th Streets. The children left the bus and entered Spring Garden Street directly in front of the bus. As Julian proceeded across the street, he was struck by an ambulance which was improperly passing the bus. Julian sustained fatal injuries and died the following day.

On March 3, 1995, Warrick filed a first lawsuit against SEPTA, the ambulance driver and ambulance corporate entities, alleging, *inter alia,* that Julian Warrick's injuries and death, as well as Demetrius Warrick's emotional injuries, were the direct and proximate result of the defendants' joint and several negligence. (R.R. at 127a–46a.) On March 8, 1996, Warrick filed a second lawsuit, making identical allegations against SEPTA.[1] (R.R. at 152a–76a.) Pursuant to motion, the trial court consolidated the March 1996 action with the previously filed 1995 case that arose out of the same occurrence.

On June 3, 1996, prior to the consolidation, SEPTA filed a motion for summary judgment in the 1995 case only, asserting the affirmative defense of sovereign immunity and claiming that, as a Commonwealth agency, it was immune from suit under section 8521 of the Judicial Code (Code), 42 Pa.C.S. § 8521, because Warrick's claim did not fit within any of the enumerated exceptions to immunity found at Code section 8522, 42 Pa.C.S. § 8522. (R.R. at 179a–81a.) The trial court granted SEPTA's motion for summary judgment in an order dated August 19, 1996, resulting in SEPTA being dismissed from the 1995 action.[2] (R.R. at 210a.)

1. Essentially, Warrick alleged that SEPTA negligently failed to provide a safe egress from the bus when the SEPTA driver failed to stop at a designated bus stop and allowed passengers to alight from the bus at an undesignated intersection.

2. On September 20, 1996, Warrick filed a petition requesting reconsideration of the August 19, 1996 decision to grant summary judgment and, alternatively, requesting certification of the issue for immediate appeal to the Commonwealth Court. *Both requests were denied by order dated November 1, 1996.* (R.R. at 212a.)

On January 29, 1997, Warrick filed notice of appeal of the August 19, 1996 order to the Commonwealth Court. Subsequent to receipt of that notice, the trial court issued an opinion noting several grounds for quashing Warrick's appeal. First, according to the trial court, Warrick's appeal was untimely because it was filed more than 30 days beyond the entry of the order from which the appeal was taken, in violation of Pa. R.A.P. 903(a); second, Warrick's appeal was improper because the August 19, 1996 order, which only dismissed the claims against SEPTA, was an interlocutory order and not appealable as of right under Pa.R.A.P 341(a); and third, Warrick waived all objections to the trial court's order by failing to comply with the trial court's order pursuant to Pa.R.A.P.1925(b), directing Warrick to file a concise statement of the matters complained of on appeal within 20 days. (Warrick's brief at 24–27.)

On November 14, 1996, SEPTA filed a second motion for summary judgment relative to the 1996 lawsuit, which the trial court granted on December 30, 1996. Following a January 28, 1997 settlement with the parties other than SEPTA, Warrick now appeals from the orders granting SEPTA's motion for summary judgment.[3]

■ On appeal,[4] Warrick concedes that SEPTA is a Commonwealth agency; however, Warrick argues that there are two independent reasons why SEPTA is not immune from suit under the circumstances here. First, Warrick contends that SEPTA's enabling statute partially waives SEPTA's entitlement to sovereign immunity, allowing SEPTA to be sued by a passenger for breach of contract while SEPTA is functioning as a transportation system and a common carrier for hire. Alternatively, Warrick argues that, even if SEPTA is otherwise entitled to sovereign immunity, the SEPTA bus driver's actions relate to the operation of a motor vehicle, so that they fall within the motor vehicle

exception to sovereign immunity. We disagree with both of Warrick's contentions.

■ With regard to the first argument, Warrick contends that SEPTA, a regional transportation authority created and still operating under the terms of its enabling statute, now known as the Metropolitan Transportation Authorities Act (Act),[5] currently found at 74 Pa.C.S. §§ 1701–1785, was functioning as a transportation system and common carrier for hire at the time of this accident. Warrick asserts that, in the Act, the General Assembly waives the shield of sovereign immunity and allows SEPTA to be sued for breach of a contract for hire, even though it is a Commonwealth agency.[6] In other words, Warrick argues that, when SEPTA breaches its contract for hire with a passenger, it can be sued for the consequences of its breach. In support of this argument, Warrick relies on section 1741(a)(2) of the Act, 74 Pa.C.S. § 1741(a)(2), which states in pertinent part:

**(a) Powers enumerated.**—An Authority shall have and may exercise all powers

---

3. Like the August 19, 1996 order, the December 30, 1996 order was interlocutory because it dismissed the claims against SEPTA only, with the case continuing against all other defendants. However, on January 28, 1997, all parties with the exception of SEPTA entered into a settlement agreement, thereby ending the lawsuit against all parties except SEPTA and transforming the trial court's orders of August 19, 1996 and December 30, 1996 from interlocutory to final orders. Pursuant to Pa.R.A.P. 513, the parties stipulated to the consolidation of these appeals before this court. (Warrick's brief at 37.)

4. Our scope of review of a trial court order granting a motion for summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Bazemore v. Southeastern Pennsylvania Transp. Auth.*, 657 A.2d 1323 (Pa.Cmwlth.1995). A trial court may properly grant summary judgment when the moving party has established that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Id.* The motion for summary judgment encompasses two concepts: (1) the absence of a dispute as to any material fact, so that there is no issue to submit to a jury; and (2) the absence of evidence sufficient to permit a jury to find a fact essential to the cause of action or defense. *See* Pa.R.C.P. No. 1035.2.

5. SEPTA was created pursuant to an act of the General Assembly, Act of June 30, 1965, P.L.

163, 73 P.S. §§ 751–761. Repealed. It subsequently operated under the Pennsylvania Urban Mass Transportation Law, Act of Jan. 22, 1968, P.L. 42, No. 8, as added by Act 1980, July 10, P.L. 427, No. 101, 55 P.S. §§ 600.101–600.343. Repealed by the Metropolitan Transportation Authorities Act, Act of Aug. 5, 1991, P.L. 238, No. 26, 74 Pa.C.S. §§ 1501–1543. Repealed by Act of February 10, 1994, P.L. 20, No. 3, imd. effective.

6. Authority for the General Assembly to waive sovereign immunity in specific instances is found at 1 Pa.C.S. § 2310, which states:

§ 2310. Sovereign immunity reaffirmed; specific waiver
Pursuant to section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by provisions of Title 42 (relating to judiciary and judicial procedure) unless otherwise specifically authorized by statute.

necessary or convenient for the carrying out of the purposes of this chapter, including the following rights, powers and duties:

> (2) To sue and be sued, ... in all courts ... in any matter affecting the operation of any project of the authority.

Warrick concedes that section 1711(c)(3) of the Act shows the intent of the General Assembly to continue SEPTA's entitlement to sovereign immunity absent an exception by providing:

> (3) It is hereby declared to be the intent of the General Assembly that an authority created or existing under this chapter ... shall continue to enjoy sovereign and official immunity, as provided in 1 Pa.C.S. § 2310 (relating to sovereign immunity reaffirmed; specific waiver), and shall remain immune from suit except as provided by and subject to the provision of 42 Pa. C.S. § 8501 (relating to definitions) through 8528 (relating to limitations on damages).

74 Pa.C.S. § 1711(3). Nevertheless, Warrick claims that, aside from the exceptions to immunity found in 42 Pa.C.S. § 8522, there is also a specific exception found when a metropolitan transportation authority is acting as a common carrier for hire. According to Warrick, when a transportation authority is performing its contractual duties in this capaci-ty, the Act waives sovereign immunity, and where there is a breach of contract between the authority and a fare paying passenger, the transportation authority has the obligation and responsibility to be sued and does not have the shield of sovereign immunity.

Warrick maintains that SEPTA's duties under a contract for hire would include stopping at designated bus stops to discharge passengers, refraining from discharging passengers at dangerous intersections, and other incidentals required as a common carrier for hire in operating a transportation system. Thus, Warrick asserts that she may sue SEPTA under section 1741 of the Act because SEPTA clearly breached its contract for hire to operate its bus safely and to discharge passengers at a safe and proper bus stop, and not at a dangerous intersection.

Warrick cites no authority for its position because, in fact, there is none.[7] Indeed, Warrick's argument is contrary to all established precedent confirming SEPTA's entitlement to sovereign immunity. In *Marshall v. Port Authority of Allegheny County*, 524 Pa. 1, 568 A.2d 931 (1990), our supreme court held that the Port Authority was a Commonwealth agency entitled to the protection of sovereign immunity. That case was followed by *Spencer v. Southeastern Pennsylvania Transportation Authority*, 525 Pa. 466, 581

---

7. Warrick cites *Southeastern Pennsylvania Transportation Authority v. Union Switch and Signal, Inc.*, 161 Pa.Cmwlth. 400, 637 A.2d 662, *appeal denied*, 538 Pa. 662, 648 A.2d 792 (1994), for the proposition that the General Assembly did not intend SEPTA to be a Commonwealth agency in the traditional sense or for SEPTA employees to be considered employees for other legislative enactments. (Warrick brief at 16.) Warrick's reliance on *Union Switch* to support her argument is misplaced, however. In that case, SEPTA was involved in a contract dispute with Union Switch over the installation of electrical equipment. The issue was whether SEPTA was to be considered the "Commonwealth" for purposes of determining jurisdiction when contract claims are filed against it with the Board of Claims. We held that SEPTA was not subject to the Board of Claims' jurisdiction; however, in doing so, we recognized that our supreme court held that the Port Authority and SEPTA were Commonwealth agencies entitled to the protection of sovereign immunity. *Marshall v. Port Auth. of Allegheny County*, 524 Pa. 1, 568 A.2d 931 (1990); *Feingold v. Southeastern Pennsylvania Transp. Auth.*, 512 Pa. 567, 517 A.2d 1270 (1986).

Warrick argues that *Feingold*, while routinely cited for the principle that SEPTA is protected by sovereign immunity, actually only determined that a regional transportation authority was an agency of the Commonwealth for purposes of determining whether punitive damages were recoverable against it, and the case never determined whether a regional transportation authority enjoyed sovereign immunity in all circumstances. We disagree.

In *Feingold*, our supreme court held that, as a regional transportation agency, SEPTA could not be assessed punitive damages. However, contrary to Warrick's contention, the case does not imply that, while punitive damages cannot be awarded against SEPTA, SEPTA can still be sued for compensatory damages. *Feingold* was decided at a time when the doctrine of sovereign immunity had been abolished. The court specifically noted that recovery of compensatory damages was possible only because of that abolition, thus acknowledging that if sovereign immunity had still existed, it would apply to shield SEPTA from tort liability.

A.2d 565 (1990), in which the supreme court, based on *Marshall* and *Feingold v. Southeastern Pennsylvania Transportation Authority,* 512 Pa. 567, 517 A.2d 1270 (1986), reached the same result for SEPTA. Caselaw after *Spencer* has continued to hold that a suit against SEPTA must fall within the exceptions to sovereign immunity.

Further, although SEPTA's enabling statute gives SEPTA the right to sue and be sued, there is no reason to read this as a waiver or modification of sovereign immunity. Indeed, the Act itself provides that SEPTA remains immune from suit unless a plaintiff has a cause of action that is encompassed by an exception to sovereign immunity. 74 Pa.C.S. § 1711(c)(3). SEPTA is defined as a Commonwealth party and, consequently, is immune from liability unless the claim is based on one of the exceptions to immunity found in 42 Pa.C.S. § 8522.[8]

However, Warrick argues alternatively that SEPTA is not immune from this lawsuit even under the general sovereign immunity of 42 Pa.C.S. § 8521 because the case falls within the motor vehicle exception to sovereign immunity, 42 Pa.C.S. § 8522(b)(1) (emphasis added), which provides:

**(b) Acts which may impose liability.—** The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

**(1) Vehicle liability.—**The *operation* of any motor vehicle in the possession or control of a Commonwealth party. As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

Warrick contends that the SEPTA bus driver's actions in negligently operating his bus past a designated bus stop, in disregarding SEPTA operating procedure, in communicating with the passengers to exit, and in discharging them into a dangerous intersection, all of which caused Julian Warrick's accident, are acts relating to the *operation* of a motor vehicle, bringing this case within the motor vehicle exception to sovereign immunity.

In making this argument, Warrick relies on *Vogel v. Langer,* 131 Pa.Cmwlth. 236, 569 A.2d 1047 (1990) and *White v. The School District of Philadelphia,* 687 A.2d 4 (Pa. Cmwlth.), *appeal granted,* 548 Pa. 663, 698 A.2d 70 (1997), for the proposition that when a vehicle is temporarily stopped, as opposed to parked,[9] or when the driver communicates to the passenger that it is safe to exit, the motor vehicle exception will apply to impose liability for injuries caused as a result of the negligent operation of the vehicle. However, neither *Vogel* nor *White* help Warrick here.

In *Vogel,* we held that a bus was in operation within the meaning of the motor vehicle exception to immunity when it was momentarily stopped *in traffic* and the driver *signalled* to another driver, prompting him to enter the intersection where he was struck by another vehicle. We recognized that operation of any motor vehicle necessarily en-

---

**8.** We also reject Warrick's attempt to maintain her suit by recasting this personal injury action as a contract claim, based on the argument that SEPTA is a common carrier and has contracted to provide safe passage. It is clear that Warrick's claim is not based in contract, but in tort. An examination of Warrick's complaint does not suggest a contract theory, but, rather, clearly sets forth a personal injury case, stating that the accident was caused by SEPTA's carelessness and negligence. Further, the damages sought included physical pain, mental anguish, disability, disfigurement, loss of life's pleasures and emotional distress, for which there is no recovery under contract law. Indeed, the word, "contract" is never found in the complaint.

**9.** In this way, Warrick attempts to distinguish the present case from *Love v. City of Philadelphia,* 518 Pa. 370, 543 A.2d 531 (1988), in which a woman was injured as she exited from a *parked,* city-owned van. The issue in *Love* was whether the act of entering into or alighting from a motor vehicle constitutes "operation" of that vehicle under 42 Pa.C.S. § 8542(b)(1). Absent a statutory definition of the word "operation," the court construed it strictly to reflect the expressed legislative intent to insulate governmental agencies from tort liability. After reviewing dictionary definitions, the court concluded that operation required putting something into motion and that getting into or alighting from a vehicle are merely acts ancillary to the actual operation of that vehicle. *Love.*

tails such temporary stops due to traffic and resulting communications with other drivers.

In *White*, a child exited a school bus, walked around to the front of the bus and looked at the driver before crossing in response to the driver's wave *signal* to proceed. While following this instruction, the child was struck by an oncoming vehicle. Basing our decision on *Vogel*, we concluded that sovereign immunity did not apply because a wave to a pedestrian as opposed to another driver was a distinction without a difference.

Warrick attempts to fit this case within *Vogel* based on the fact that the bus here was only stopped temporarily. However, we have already determined that, unlike the temporary stop in *Vogel*, which was attendant to traffic control, a temporary stop connected to the discharge of passengers is not part and parcel of the operation of a vehicle. Pennsylvania caselaw limits injuries caused by the operation of a vehicle to those injuries resulting from the actual movement of the vehicle or a moving part of the vehicle. *Bazemore v. Southeastern Pennsylvania Transp. Auth.*, 657 A.2d 1323 (Pa.Cmwlth. 1995). *See also, Miller v. Erie Metropo. Transit Auth.*, 152 Pa.Cmwlth. 64, 618 A.2d 1095 (1992), *appeal denied*, 537 Pa. 643, 644 A.2d 165 (1994); *Lehman v. County of Lebanon Transp. Auth.*, 143 Pa.Cmwlth. 416, 599 A.2d 259 (1991).

■ Further, Warrick contends that this case resembles both *Vogel* and *White* by maintaining that the opening of the bus doors to drop off a passenger was a communication from the bus driver to the passengers that they could proceed safely. However, in contrast to the situation in *Vogel* and *White*, there is no allegation in this case suggesting any communication by the driver, either in the form of a verbal communication or a wave. In fact, the testimony of Demetrius

Warrick indicates that the driver did nothing more than open the doors; the children then left the bus and waited for a green light before starting across the street. (R.R. at 37a–38a.) Under such circumstances, to hold that the mere opening of the doors to drop off a passenger amounts to the type of communication that could lead to the imposition of liability in sovereign immunity cases would be an unwarranted expansion of the motor vehicle exception.

■ Moreover, Warrick's argument for liability based on the assertion that SEPTA's bus did not stop at the designated bus stop and allowed plaintiffs to exit at a dangerous intersection cannot prevail. The accident was caused by the ambulance improperly passing the bus, which had nothing to do with the bus' placement.[10]

The deposition of Demetrius Warrick, who was at the scene, does not allege that either he or his brother Julian was injured by the movement of the bus or by any moving part of the bus. Under established law, therefore, Warrick is not entitled to recover from SEPTA because her claim does not fall within any of the exceptions to sovereign immunity. Accordingly, we affirm the trial court's granted of summary judgment in favor of SEPTA.

### *ORDER*

AND NOW, this 21st day of November, 1997, the orders of the Court of Common Pleas, dated August 19, 1996 and December 30, 1996, are hereby affirmed.

---

10. Indeed, although Warrick makes much of the fact that the bus did not stop in the middle of the block, where it was *safe*, but, rather, stopped some two to three feet up, at the *dangerous intersection*, we point out that in order to cross the street, the boys would have had to go to the intersection in any event since it is illegal, because of safety reasons, to cross in the middle of a block. Further, Warrick seems to imply that the driver let the boys out into traffic; however, it is clear that the boys got out of the bus a few feet from the curb and had to cross in front of the bus in order to get into the path of traffic. (R.R. at 18a.) Before doing so, the boys properly waited for the light to turn green, (R.R. at 38a), yet Julian was struck by the ambulance as it attempted to pass the bus in the travel lane to the left.