739 A.2d 127

Lisa WARRICK, Administratrix of the Estate of Julian Michael Warrick, Deceased, Individually and on Behalf of the Decedent's Estate, Demetrius Warrick, a minor, by his mother and natural guardian, Lisa Warrick, and Julius Warrick, Appellants,

v.

PRO COR AMBULANCE, INC., P.A.I. Liquidating Corp., Careline Delaware Valley, Inc., Brian Tuck and Southeastern Pennsylvania Transportation Authority, Appellees.

Supreme Court of Pennsylvania.

Argued Feb. 2, 1999.

Decided Oct. 12, 1999.

---

Thomas Bruno, II, Philadelphia, for Lisa Warrick.

Laurence M. Kelly, Montrose, for Amicus–PA Trial Lawyers.

Joan A. Zubras, Joseph H. Jacovini, Philadelphia, for SEPTA.

Joseph J. Dacouini, Colin Meneely, Pittsburgh, for Amicus–Port Authority.

Alfred W. Putnam, Jr., Philadelphia, for Amicus–PA Public Transp. Authority.

Suzanne McDonough, Philadelphia, for Amicus–School Dist. Authority.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### ORDER

PER CURIAM:

**AND NOW**, this 12th day of October, 1999, the Order of the Commonwealth Court is affirmed. See *White v. School District of Philadelphia*, 553 Pa. 214, 718 A.2d 778 (1998).

Justice NEWMAN files a Dissenting Statement in which Justice NIGRO joins.

NEWMAN, Justice, dissenting.

We granted allocatur to determine whether a SEPTA bus that is negligently stopped at the wrong stop while on its regular route, thus blocking discharging passengers from view of approaching traffic, is in "operation" as that term is used in Section 8522 of the Judicial Code (Code), 42 Pa.C.S. Section 8522 (Exceptions to Sovereign Immunity). Because I believe that the Appellant has stated conduct that falls within the

motor vehicle exception to sovereign immunity, and because I believe that the Commonwealth Court has drawn this exception too narrowly, I dissent.

## FACTUAL AND PROCEDURAL HISTORY

On March 11, 1994, five-year-old Julian Warrick (Julian) and his eleven-year-old brother, Demetrius Warrick (Demetrius), were returning home from school on a SEPTA bus. The bus discharged Julian and Demetrius at the curb, near the dangerous intersection of 33rd and Spring Garden Streets in Philadelphia. This was not the regular stop. The children left the bus and were on Spring Garden Street directly in front of the bus. The record evidence indicates that the bus blocked the children from view of approaching traffic. As Julian began to cross the street, an ambulance passed the bus, hitting him. His injuries were fatal and he died the following day. Lisa Warrick, Administratrix of the Estate of Julian Michael Warrick (Appellant) filed suit against SEPTA, the ambulance driver, and the ambulance corporate entities. Appellant also filed a separate lawsuit solely against SEPTA. The trial court consolidated these actions. SEPTA filed a motion for summary judgment asserting that it was entitled to immunity. The trial court granted SEPTA's motion and entered summary judgment on the basis that SEPTA was immune from suit pursuant to Section 8522 of the Code. The Commonwealth Court affirmed without dissent. *Warrick v. Pro Cor Ambulance,* 709 A.2d 422 (Pa.Cmwlth.1997).

## ANALYSIS

The motor vehicle exception, Section 8522(b)(1) of the Code, states that a Commonwealth party, such as SEPTA, may be liable for personal injury damages if the injury results from

The operation of any motor vehicle in the possession or control of a Commonwealth party. As used in this paragraph, "motor vehicle" means any vehicle, which is self-propelled, and any attachment thereto, including vehicles operated by rail, through water or in the air.

42 Pa.C.S. § 8522(b)(1). Appellant presented evidence that Julian's injury and death were a result of the bus driver's decision to discharge the passengers at an undesignated stop that was dangerous. The Commonwealth Court determined that the actions at issue did not fit within the motor vehicle exception because Julian was not "injured by the movement of the bus or by any moving part of the bus." I disagree.

I believe that it is impossible to look at the term "operation" of a motor vehicle in a vacuum and ignore the purpose for which the vehicle is operated, particularly where, as here, the sovereign is acting as a common carrier in the operation of its vehicle. In this case, SEPTA serviced a specific bus route, which regularly transported school children to and from school. The public, especially children, put their trust in the driver of a common carrier to stop at the designated stop, and not at a dangerous location. They assume that the driver will not let them off the bus in a place where approaching traffic can not see them.

The determination that the motor vehicle exception is limited to an injury that results from "the movement of the bus or by any moving part of the bus" is much too narrowly drawn. The process of operating a vehicle encompasses more than simply moving the vehicle. When a person "operates" a vehicle, he makes a series of decisions and actions, taken together, which transport the individual from one place to another. The decisions of where and whether to park, where and whether to turn, whether to engage brake lights, whether to use appropriate signals, whether to turn lights on or off, and the like, are all part of the "operation" of a vehicle.

I further do not believe that any of our previous decisions control this case. In *White v. School District Of Philadelphia*, 553 Pa. 214, 718 A.2d 778 (1998), the Majority of this Court determined that a school bus driver who motions a child across the street, *after* the driver has discharged the child, was not "operating" the bus at the time. While I disagree with this conclusion (see dissent in *White*), I believe that there is a great distinction between a driver motioning a child across the street and the driver's decision of where to stop the

vehicle in order to discharge passengers. In *White*, the driver's action, while necessary to carry out safely the duty of the school bus for safe transit, is ancillary to the physical act of operating the school bus. Without a doubt, the bus could transport students from one place to another without the driver motioning the children across the street. Here, however, the Septa bus could not function without the bus stopping and starting. Its very function is to pick up passengers in one designated location and drop them off at another. Thus, the decisions of where to stop the bus and where to discharge passengers are not ancillary to the function and purpose of the bus. Indeed, the bus could not carry out its function if it could not discharge a passenger. The bus must stop so the passengers can get off! Because the driver is carrying out a necessary function to the operation of the bus when, along his route, he stops to let his passengers off, he must therefore have the corresponding duty to stop in a safe location.

The term "operation" reflects a continuum of activity, the boundaries of which this Court should define. "Operation" does not mean simply moving forward or backwards, but instead includes the decision making process that is attendant to moving the vehicle. Had the legislature intended that recovery was permissible only when the vehicle was actually in motion, the legislature would not have used a word that implies a process, such as the term "operation." Moreover, the term "operation" of a motor vehicle occurs in other statutory provisions and in those cases, we have not required that the term "operation" means that the automobile actually be in motion. For example, in the context of the offense of driving under the influence (DUI) 75 Pa.C.S.A. § 3731, to find that a motor vehicle is in operation requires evidence that the driver was in actual physical control of the vehicle, but not that the vehicle was actually "in motion". *Commonwealth v. Wilson*, 442 Pa.Super. 521, 660 A.2d 105, 107 (1995). *See also Commonwealth v. Wolen*, 546 Pa. 448, 685 A.2d 1384 (1996)(recognizing that a finding of "actual physical control" does not require that car actually is moving).

Indeed, what if a bus driver, while intoxicated, decides to stop the SEPTA bus in the middle of a railroad track in order

to discharge passengers? Should a train come along and hit the bus, injuring those on the bus and those who got off the bus, I believe that we would be hard pressed to say that the sovereign was immune for any of those injuries. Moreover, the bus driver could be charged with the offense of driving under the influence while *operating* a motor vehicle. Other than degree, I see no difference between that drastic example and the case here. In both, the decision and act of stopping the bus are incident to the operation of the bus, and caused injury to this child. The sovereign should not be immune for injuries that result.

The term "operation" should encompass more than the mere "movement" of a bus to determine whether a Plaintiff's injury resulted from the "operation" of a motor vehicle. Here, I believe that the act **and** the decision of **where** to discharge the passengers, including this small child, constitute an integral component to the "operation" of the SEPTA bus. Thus, I find that the Commonwealth Court incorrectly affirmed the entry of summary judgment of the trial court because SEPTA is immune from suit pursuant to Section 8521 of the Code. In reaching this conclusion, I find persuasive the Third Circuit's statement in *Toombs v. Manning,* 835 F.2d 453, 468 (3rd Cir.1987)(en banc) that, "the operation of a SEPTA vehicle cannot be divorced from the purposes of the vehicle's operation." The *Toombs* court rejected the rigid analysis that a vehicle is operated only where it is in motion and determined that, when applied to a common carrier, the term "operation" covered the discharge of passengers from a subway car. I would adopt a similar analysis as set forth above. This result is also consistent with a recent decision of this Court recognizing that the plain language of the motor vehicle exception encompasses negligent acts related to the operation of a vehicle. *See Mickle v. City of Philadelphia,* 550 Pa. 539, 707 A.2d 1124 (1998) (City not immune where plaintiff was injured while riding in a City-owned vehicle due to negligent maintenance of the vehicle).

Accordingly, I dissent.

Justice NIGRO joins this Dissenting Statement.