797 A.2d 898

Alice K. REGESTER, in her Own Right, and as Administratrix of
the Estate of George E. Regester, III, and Gary W. Regester
and George E. Regester, IV and Stephen H. Regester and Patri-
cia J. Regester and Mary Kay Piergalline and Dolores R.
Chandler, Appellants,

v.

COUNTY OF CHESTER, Kennett Township, Kennett Borough,
Longwood Fire Co. and Southern Chester County Medical
Center, Appellees.

Appeal of Southern Chester County Medical
Center at 12 MAP 2001.

Supreme Court of Pennsylvania.

Argued Oct. 17, 2001.

Decided May 31, 2002.

Thomas David Schneider, Huntington Valley, Joseph M. Fioravanti, Media, for Alice K. Register, et al.

Jeffrey H. Quinn, Pittsburgh, for Longwood Fire Company.

Barbara S. Magen, Kristin L. Thompson, William F. Sutton, Philadelphia, for Southern Chester Co. Medical Center.

Before: ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, JJ.

## *OPINION*

Justice SAYLOR.

In this appeal, we review questions concerning the scope of the vehicle liability exception to the statutory immunity available to local governmental agencies, as well as the breadth of the immunity available under the Emergency Medical Services Act.

For purposes of the summary judgment determinations in question, the relevant factual circumstances, recited in the manner most favorable to the non-moving parties, the estate of Mr. George E. Regester, III, and family members (the "Regesters"), are as follows. Shortly after 7 p.m. on September 8, 1996, Mr. Regester suffered cardiac arrest. While administering cardiopulmonary resuscitation and restoring Mr. Regester's pulse, his family: telephoned the local emergency services number; requested an ambulance; indicated a

correct street address for the Regester family's home of 4 Raintree Lane, Kennett Township (an unimproved but designated street on the subdivision plan for the Regesters' neighborhood); and provided accurate driving directions. The emergency services operator radioed both the Longwood Fire Company, Inc. ("Longwood"), which provides volunteer fire protection services as well as ambulance service in the Regester family's geographical area, and the Southern Chester County Medical Center ("SCCMC"), a hospital that maintains a mobile critical care unit within Chester County's emergency services system. The operator also relayed the provided driving directions, which, if followed, should have resulted in the affordance of emergency treatment to Mr. Regester within three to four minutes, since Longwood was located within two miles of the Regester family home. Nevertheless, both sets of emergency medical services ("EMS") personnel responded to information from Longwood's station that there was a Raintree Lane located near Pennsylvania's southeastern border; therefore, they were delayed in their arrival. Just before 7:30 p.m., Mr. Regester vomited, blocking his airway, and his condition deteriorated rapidly. Although EMS personnel reached the scene within the next few minutes, they were unable to revive him.

Subsequently, the Regesters commenced a wrongful death and survival action against Longwood, SCCMC, and others. In their complaint, the Regesters alleged, *inter alia,* that the emergency services dispatchers and providers negligently failed to familiarize themselves with the geographic area which they served, resulting in the unavailability of prompt and essential medical attention to Mr. Regester. In its answer, Longwood asserted that it was immune from liability pursuant to the provisions of the Judicial Code affording, in favor of local agencies, governmental immunity from claims for damages from injuries to persons and property. *See* 42 Pa.C.S. §§ 8541–8542.[1] SCCMC contended that, pursuant to the im-

---

1. Section 8541 of the Judicial Code expresses the general precept that:
   Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person

munity provisions reposited in Section 11(j)(2) of the Emergency Medical Services Act,[2] 35 P.S. § 6931(j)(2), it could not be held liable absent proof of gross or willful negligence, which the Regesters failed to either plead or put into factual controversy.[3] At the conclusion of discovery, Longwood and SCCMC moved for summary judgment based upon their respective claims of immunity. In response, the Regesters contested Longwood's claim to local agency status and further argued that their own claims against Longwood were not barred by the immunity statute as they fell within an express, statutory exception afforded as to negligent acts connected with vehicle operation. *See* 42 Pa.C.S. § 8542(a)(2), (b)(1).[4]

or property caused by an act of a local agency or an employee thereof or any other person.
42 Pa.C.S. § 8541.

2. Act of July 3, 1985, P.L. 164, No. 45 (codified at 35 P.S. §§ 6921–6938) (the "EMSA").

3. Section 11(j)(2) of the EMSA provides:
No first responder, emergency medical technician or EMT-paramedic or health professional who in good faith attempts to render or facilitate emergency medical care authorized by this act shall be liable for civil damages as a result of any acts or omissions, unless guilty of gross or willful negligence. This provision shall apply to students enrolled in approved courses of instruction and supervised pursuant to rules and regulations.
35 P.S. § 6931(j)(2). The Regesters sought leave to amend their complaint to include an allegation of gross negligence on the part of SCCMC; however, such motion was denied contemporaneous with the trial court's summary judgment determinations. Given our resolution, below, concerning SCCMC's entitlement to invoke the EMSA's immunity provision, it is unnecessary to review the correctness of the trial court's reasoning in this regard.

4. The exceptions to governmental immunity are set forth in Section 8542 of the Judicial Code and expose a local agency to liability in instances of injury claims where: 1) damages would otherwise be recoverable under common law or statute; 2) the injury was caused by a negligent act of the local agency or an employee acting within the scope of his office or official duties; and 3) the negligent act falls within an enumerated category to include:
(1) Vehicle liability.—The operation of any motor vehicle in the possession or control of the local agency, provided that the local agency shall not be liable to any plaintiff that claims liability under this subsection if the plaintiff was, during the course of the alleged negligence, in flight or fleeing apprehension or resisting arrest by a police officer or knowingly aided a group, one or more of whose

Concerning SCCMC's motion, the Regesters contended that the limitation upon liability provision in Section 11(j)(2) of the EMSA, by its terms, extends only to individual emergency medical services personnel but does not protect organizations such as SCCMC.

Subsequently, the trial court granted summary judgment in favor of both defendants. First, citing to *Guinn v. Alburtis Fire Co.*, 531 Pa. 500, 502 n. 2, 614 A.2d 218, 219 n. 2 (1992) (explaining that "a volunteer fire company created pursuant to relevant law and legally recognized as the official fire company for a political subdivision is a local agency"), the court deemed Longwood a local agency entitled to assert governmental immunity. Additionally, the trial court reasoned that, since Longwood's ambulance was not actually driven in a negligent manner and no causal relationship existed between its physical operation and the harm to Mr. Regester, the vehicle liability exception to the general rule of immunity in favor of local agencies was inapplicable. Concerning SCCMC, the trial court cited *D'Amico v. VFW Post 191 Volunteer Ambulance Ass'n*, 8 Pa. D. & C.4th 113 (C.P. Washington 1990), *aff'd mem.*, 413 Pa.Super. 660, 596 A.2d 256 (1991), for the proposition that, under Section 11(j)(2) of the EMSA, immunity from civil liability for negligence extends to organizations whose personnel provide emergency medical services.

The Regesters appealed, and the Commonwealth Court affirmed in part and reversed in part. *See Regester v. Longwood Ambulance Co., Inc.*, 751 A.2d 694, 703 (Pa.Cmwlth. 2000). Regarding the claims against Longwood, the court agreed preliminarily with the trial court's conclusion that Longwood was a local agency entitled to assert governmental immunity, *see id.* at 699–701, and also rejected the Regesters' attempt to invoke the vehicle liability exception. Concerning the latter, the court initially cited *Mickle v. City of Phila.*, 550

members were in flight or fleeing apprehension or resisting arrest by a police officer. As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air. 42 Pa.C.S. § 8542(a), (b)(1). *See generally White v. School Dist. of Phila.*, 553 Pa. 214, 217, 718 A.2d 778, 779 (1998).

Pa. 539, 707 A.2d 1124 (1998)(holding that a city's alleged negligent maintenance and repair of a van constituted acts within the vehicle liability exception), in crediting the Regesters' argument that the vehicle liability exception encompasses a broader range of conduct than solely negligent driving. *See Regester*, 751 A.2d at 702 (citing *Mickle*, 550 Pa. at 543, 707 A.2d at 1126). It emphasized, nonetheless, that exceptions to governmental immunity are to be narrowly construed, *see Regester*, 751 A.2d at 703 (citing *Love v. City of Phila.*, 518 Pa. 370, 374, 543 A.2d 531, 532 (1988)), and relied upon its own prior decisions to hold that there was an insufficient connection between the asserted negligence and the operation of Longwood's ambulance to satisfy the requirements of the vehicle liability exception. *See Regester*, 751 A.2d at 702–03 (citing *Keesey v. Longwood Volunteer Fire Co.*, 144 Pa. Cmwlth. 466, 472–73, 601 A.2d 921, 924 (1992)(holding that a dispatcher's failure to relay a supervisor's order to decelerate to the driver of a fire truck did not constitute operation for purposes of the vehicle liability exception); *Tyree v. City of Pittsburgh*, 669 A.2d 487, 491 (Pa.Cmwlth.1995)(holding that a municipality is immune from suit on a claim of negligence by a police officer in terms of his decision to chase a violator); *Hawks by Hawks v. Livermore*, 157 Pa.Cmwlth. 243, 247–48, 629 A.2d 270, 272 (1993)(same)).

With respect to the Regesters' claim against SCCMC, however, the Commonwealth Court held that the grant of summary judgment must be reversed. *See Regester*, 751 A.2d at 699. While acknowledging SCCMC's argument that the immunity afforded under the EMSA reflects the nature of the services provided and the public interest in maintaining an effective and efficient emergency medical system, the court deemed such policy arguments irrelevant in light of the plain language of the enactment. *See id.* at 698. In reviewing the statutory terms, the court observed that the EMSA affords immunity in favor of a "first responder, emergency medical technician or EMT-paramedic or health professional," and that such operative terms are defined in the enactment in terms of individuals (*i.e.*, natural persons) with enumerated, specialized

training. *See id.* at 698 (citing 35 P.S. § 6931(j)(2)). Further, the Commonwealth Court emphasized that the General Assembly was well aware of the involvement of institutions and organizations in the provision of emergency medical care, particularly as it had included common forms of medical services organizations among defined terms of the EMSA. *See id.* at 698. Thus, the court determined that the immunity provisions unambiguously operated in favor of individual actors but not their institutional, organizational, or corporate principals. *See id.* at 698–99. The Commonwealth Court also questioned the reasoning of *D'Amico* (which was invoked by the trial court), noting that, although *D'Amico* was affirmed by the Superior Court in an unpublished opinion, such order lacked the binding effect of precedent. *See id.* at 699 n. 2. Finally, the court acknowledged *Farago v. Sacred Heart Gen. Hosp.,* 522 Pa. 410, 562 A.2d 300 (1989), in which this Court interpreted the immunity provisions of the Mental Health Procedures Act, 50 P.S. § 7114, to extend immunity to hospitals in addition to their personnel. *See Regester,* 751 A.2d at 699 n. 2. However, the Commonwealth Court distinguished *Farago* on the ground that, unlike the EMSA, the Mental Health Procedures Act affords immunity in favor of certain "persons" without any associated, statutory definition. *See Regester,* 751 A.2d at 699 n. 2. With regard to *Farago's* broader policy discussion, *see, e.g., Farago,* 522 Pa. at 416–17, 562 A.2d at 303 (reasoning that "[t]o allow an individual to claim immunity under this provision but in turn to preclude [his] employer the same benefit of the immunity would indeed undermine the stated purpose of the limited immunity conferred under the Act"), the Commonwealth Court characterized such discussion as *dicta* and deemed it deficient on the ground that it fails to expressly consider the precept that "a 'principal may not raise immunity of agent as a defense to claim based on *respondeat superior.*' " *Regester,* 751 A.2d at 699 n. 2 (quoting *Wicks v. Milzoco Builders,* 481 Pa. 554, 557 n. 2, 393 A.2d 300, 301 n. 2 (1978)(citing RESTATEMENT (SECOND) OF AGENCY § 217)).

Appeal was allowed on a limited basis to address the application of the vehicle liability exception to governmental immunity,[5] as well as the scope of the limitation on liability provision in the EMSA as it pertains to corporate and institutional principals.[6]

Presently, the Regesters advocate a general rule to the effect that all negligent decision making of government actors occurring within the course of the operation of a vehicle constitutes negligent operation of a vehicle under Section 8542. The Regesters derive such rule from: this Court's decisions in *Jones v. Chieffo*, 549 Pa. 46, 49–52, 700 A.2d 417, 419–20 (1997)(plurality opinion)(indicating that certain decision making by a police officer in connection with a high-speed chase could constitute negligence), and *Mickle*, 550 Pa. at 539, 707 A.2d at 1124; the Commonwealth Court's opinion in *Aiken v. Borough of Blawnox*, 747 A.2d 1282 (Pa.Cmwlth.), *allocatur denied*, 564 Pa. 714, 764 A.2d 1072 (2000); and the reasoning provided by Madame Justice Newman in her dissenting statement in *Warrick v. Pro Cor Ambulance, Inc.*, 559 Pa. 44, 46–49, 739 A.2d 127, 127–29 (1999)(Newman, J., dissenting). According to the Regesters, there is no justifiable difference between a negligent decision to drive while a vehicle was in a poor state of repair (*Mickle*), or a police officer's decision to engage in a high-speed chase (*Aiken*), and Longwood's decision to ignore driving directions and travel to a wrong location in an emergency vehicle. Longwood, on the other hand, emphasizes the rule requiring a narrow interpretation of immunity exceptions. Further, it argues that the good-faith route selection decisions of the EMS personnel were unrelated to both the actual physical operation of the ambulance and the

5. The Regesters also sought review concerning whether the Commonwealth Court erred in concluding that Longwood is a local agency entitled to assert governmental immunity in the first instance. Appeal was not allowed, however, concerning such question.

6. As the holdings at issue embody purely legal conclusions, the applicable review focuses upon whether, in granting summary judgment, the court committed an error of law, *see Murphy v. Duquesne Univ. of the Holy Ghost*, 565 Pa. 571, 590, 777 A.2d 418, 429 (2001), and our standard of review is plenary, *see id.* (citing *Phillips v. A–Best Products Co.*, 542 Pa. 124, 130, 665 A.2d 1167, 1170 (1995)).

harm alleged. In this regard, Longwood cites extensively to *White*, 553 Pa. at 220–21, 718 A.2d at 781 (holding that a bus driver's alleged negligence in signaling an alighted student to cross the street was outside the vehicle liability exception), and the *per curiam* order in *Warrick*, 559 Pa. at 44, 739 A.2d at 127, which was expressly based upon *White*.

## I. Governmental Immunity

■ As noted, the vehicle liability exception to governmental immunity is interpreted narrowly in keeping with the General Assembly's intention to insulate local agencies from tort claims. *See Love*, 518 Pa. at 374, 543 A.2d at 532. Consistent with such interpretation, the term "operation," as used within the exception, has been strictly construed as meaning the placement of a vehicle in motion. *See id.* at 375, 543 A.2d at 533 (explaining that "merely preparing to operate a vehicle, or acts taken at the cessation of operating a vehicle[,] are *not* the same as actually operating that vehicle" (emphasis in original)). *Love* continues to embody the prevailing interpretation, as, contrary to the Regesters' argument, neither of this Court's decisions in *Jones v. Chieffo* or *Mickle* overruled it.[7]

7. In *Jones v. Chieffo*, a majority of Justices rejected the principle previously established in *Dickens v. Horner*, 531 Pa. 127, 611 A.2d 693 (1992), that negligent and criminal acts of third parties constituted superseding causes, which, pursuant to Section 8541 of the Judicial Code, foreclosed liability as against a political subdivision based upon certain decisions of police officers in connection with high-speed pursuit. *See Jones v. Chieffo*, 549 Pa. at 50–52, 700 A.2d at 419–20; *see also id.* at 52–53, 700 A.2d at 420–21 (Cappy, J., concurring). *Love*, however, was not predicated upon superseding cause under Section 8541, but rather, on the asserted negligence (failure to provide adequate assistance to an alighting passenger), falling within the general conferral of governmental immunity and outside the vehicle liability exception under Section 8542. *See Love*, 518 Pa. at 373–75, 543 A.2d at 532–33. *Mickle* reflects the Court's interpretation of the phrase "with respect to" in Section 8542(a)(2) as it is used to establish an essential connection between the negligent act at issue and vehicle operation. *See* 42 Pa.C.S. § 8542(a)(2). In reliance upon this associative language, the Court held that a decision to drive a vehicle in a poor state of repair, which was alleged to have directly impacted upon the physical operation of the vehicle, met the requirements of the vehicle liability exception. *See Mickle*, 550 Pa. at 543, 707 A.2d at 1126. As opposed

■ Certainly various decisions of this Court and of the Commonwealth Court establish that the vehicle liability exception encompasses more than merely negligent driving. There is no controlling authority, however, for the proposition advanced by the Regesters that any and all decisions made during the physical operation of a vehicle implicate the exception.[8] Indeed, in maintaining a narrow interpretation of the vehicle liability exception to comport with the legislative purposes involved, this Court has declined to sanction its extension to conduct more closely associated with the panoply of public functions served by governmental vehicles than with the physical operation of the vehicle itself. For example, in *White*, the Court concluded that a school bus driver's action of attempting to supervise a student's crossing the street after he had alighted, which was expressly within the range of the driver's official responsibilities, did not constitute operation for purposes of the vehicle exception. *See White*, 553 Pa. at 220–21, 718 A.2d at 781 ("While it may well be that a school district that transports students assumes an obligation to make reasonable efforts to see those students safely to their destinations, it does not necessarily follow that breach of that duty exposes the school district.to liability in tort."). In *Warrick*, the Court applied this holding in the context of a SEPTA bus driver's actions in discharging a minor passenger at an incorrect location and positioning the vehicle to block the child's view of oncoming traffic. *See Warrick*, 559 Pa. at 44, 739 A.2d at 127.

As in the present case, the Commonwealth Court has also generally followed the direction that was set by the General Assembly in circumscribing local agency liability. Here, while properly acknowledging that there is some range of negligence associated with the physical operation of a vehicle beyond actual driving that will implicate the vehicle liability exception,

to overruling *Love, Mickle* cited affirmatively to the decision and gave effect to its interpretation of vehicle operation. *See id.*

**8.** Certainly the Regesters' position is, as they note, akin to Justice Newman's position in her dissenting statement in *Warrick;* however, the Regesters fail to accord sufficient weight to the fact that such position was a minority one.

the Commonwealth Court correctly concluded that the form of negligence alleged by the Regesters does not qualify. To the contrary, such allegations of negligence on the part of Longwood and its agents in failing to maintain adequate familiarity with the emergency service area and follow provided directions is more closely associated with the public service involved (ambulance service) than it is with the physical operation of the vehicle as such. While we acknowledge that the Regesters' more expansive interpretation is not an unreasonable one, it is not a narrow one, and therefore, it is not in keeping with the Legislature's salient intent as reflected, *inter alia*, in *Love, White,* and *Warrick.*

Accordingly, we hold that the conduct of Longwood here in issue does not implicate the vehicle liability exception.

## II. The EMSA

Turning to the scope of the limitations on liability embodied in Section 11(j)(2) of the EMSA, SCCMC first attempts a plain meaning argument, indicating that the terms of the statute itself expressly cover hospitals. SCCMC then essentially advances the reasoning of the *D'Amico* court, to the effect that the *Farago* reasoning as applied in the context of the immunity provisions of the Mental Health Procedures Act, 50 P.S. § 7114(a), should apply equally to those of the EMSA. *See D'Amico,* 8 Pa. D. & C.4th at 114–15. Since emergency services providers can only act through their agents, SCCMC emphasizes, immunity must extend to institutional entities to accomplish the EMSA's fundamental purpose of removing disincentives to the provision of continuous, high-quality emergency medical care services. *See generally* 35 Pa.C.S. § 6922. SCCMC also draws an analogy to *Mamalis v. Atlas Van Lines, Inc.,* 522 Pa. 214, 560 A.2d 1380 (1989), in which this Court held that a release executed between a plaintiff and an agent terminates the derivative claim against the principal. *See id.* at 221, 560 A.2d at 1383.

█ SCCMC's plain meaning argument is meritless. The position is premised upon the assertion that the heading affixed to Section 11 of the EMSA, 35 P.S. § 6931, incorpo-

rates the defined term "providers of emergency medical services," which, by express statutory definition, includes facilities and life support services. *See* 35 P.S. § 6923. The flaw in the argument is that Section 11's heading in fact does not include the legislatively defined term alluded to by SCCMC, but rather, refers to "Emergency medical services personnel." The term "personnel" (as opposed to "providers") plainly signifies the statute's general applicability to individuals or natural persons. Accordingly, to the extent that the heading is relevant,[9] it supports the Regesters' position as opposed to SCCMC's.

■ As the Commonwealth Court held, the operative provisions of Section 11 also do not convey an intention for immunity to extend to institutional, corporate, and organizational entities. Indeed, Section 11(j)(2) is unambiguous in its limitation of immunity coverage to emergency medical technicians, EMT-paramedics, healthcare professionals, and certain supervised students, 35 P.S. § 6931(j)(2). Each of these categories connotes individuals both pursuant to the applicable statutory definition provided in Section 3 of the EMSA, 35 P.S. § 6923, and in common parlance, such that hospitals simply are not included within the scope of Section 11(j)(2).[10] *See* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). It is also significant to note that the General Assembly did expressly include institutes, organizations, and facilities within other specific immunity terms of Section 11. *See* 35 P.S. § 6931(a)(2), (j)(3) (extending immunity relating to educational practice by duly enrolled students under proper supervision to "participating institutes, organizations and facilities"). *See generally Popowsky v. Pennsylvania Pub. Utility*, 550 Pa. 449, 462, 706 A.2d

9. Headings, of course, are accorded limited weight in statutory construction. *See* 1 Pa.C.S. § 1924.

10. Pennsylvania's EMSA is distinguishable in this regard from similar legislative schemes enacted elsewhere in which hospitals, life support agencies, and other corporate and institutional entities are expressly included within the scope of the immunity provisions. *See, e.g.,* GA. CODE. ANN §§ 31–11–2, 31–11–8; MICH. COMP LAWS ANN. § 333.20965.

1197, 1203 (1997) (explaining that, where the General Assembly includes specific language in one section of a statute, but omits it from another, such language should not be implied where excluded).

The Commonwealth Court was also correct in terms of the manner in which it distinguished *Farago*, since the Mental Health Procedures Act at issue in that case lacks a separate definitional section and confers immunity in terms of "persons," which fairly may be construed more broadly than the designations contained in Section 11(j). *See Farago*, 522 Pa. at 415–16, 562 A.2d at 302–03 (citing the broad statutory definition of "person" set forth in Section 1991 of the Statutory Construction Act, 1 Pa.C.S. § 1991). Additionally, in light of the express language employed by the General Assembly in Section 11(j)(2), we agree with the Regesters that the broader policy assessment from *Farago* is not controlling. While we acknowledge the importance of the EMSA's public purposes, there is no principle of statutory construction suggesting that courts should infer that the Legislature intended to invoke any and all available means to accomplish its purposes. Particularly in the arena of statutory immunities, the Legislature is also cognizant of the strong, competing interests involved, which include the remedial purposes upon which Pennsylvania's tort liability system is premised. In light of such interests, we do not view it as unlikely that the Legislature might attempt to implement the EMSA's salutary purposes according to constraints reflected on the face of the words that it has chosen.

Finally, we agree with the Commonwealth Court's conclusion that the *Wicks* line of cases, embodying the Restatement position that the fact of an agent's immunity from civil liability does not, in and of itself, confer immunity upon the principal, *see Wicks*, 481 Pa. at 557 n. 2, 393 A.2d at 301 n. 2 (citing RESTATEMENT (SECOND) AGENCY § 217), is more apt in the present circumstances than *Mamalis*, 522 Pa. at 221, 560 A.2d at 1383, which did not involve express statutory immunity, but rather, certain consequences of the consummation of a consensual, civil release.

■ We hold, therefore, that Section 11(j)(2) evinces an intent on the part of the Legislature to confer immunity upon enumerated emergency medical services personnel but not upon their corporate, institutional, or organizational principals.

The order of the Commonwealth Court is affirmed.

Former Chief Justice FLAHERTY did not participate in the consideration or decision of this case.

Justice NEWMAN files a concurring and dissenting opinion in which Justice NIGRO joins.

Justice NEWMAN, concurring and dissenting.

I concur in the majority's conclusion that the Southern Chester County Medical Center (SCCMC) does not qualify for immunity pursuant to Section 11(j)(2) of the Emergency Medical Services Act, Act of July 3, 1985, P.L. 164, No. 45, *as amended,* 35 P.S. § 6931(j)(2). Therefore, I agree with the majority that the Commonwealth Court properly reversed the grant of summary judgment in favor of SCCMC. However, I dissent from the majority's disposition of the governmental immunity issue because I believe that the failure of the Longwood Ambulance Company (Longwood) driver to follow the directions provided is an act involving the operation of a motor vehicle.

The "vehicle exception" to governmental immunity, codified in Section 8542(b)(1) of the Judicial Code, provides that a local agency, such as Longwood, is liable for damages on account of injury to a person or property if the injury results from "[t]he operation of any motor vehicle in the possession or control of the local agency.... As used in this paragraph, "motor vehi- cle" means any vehicle which is self-propelled and any attach- ment thereto, including vehicles operated by rail, through water or in the air." 42 Pa.C.S. § 8542(b)(1). The agency is equally liable if an employee of the local agency undertakes the act causing the injury. *Id.* In this case, the Regesters presented evidence that the ambulance driver failed to follow the directions to the scene provided by the Regesters. The Commonwealth Court affirmed summary judgment in favor of

Longwood, reasoning that the vehicle exception did not apply because an act "with respect to the giving and receiving of directions" does not constitute operation of a motor vehicle. *Regester v. Longwood Ambulance Company, Inc.*, 751 A.2d 694, 703 (Pa.Cmwlth.2000). I disagree.

This case presents an issue similar to that discussed in *Warrick v. Pro Cor Ambulance, Inc.*, 559 Pa. 44, 739 A.2d 127 (1999) (Newman, J., dissenting from per curiam affirmance). In *Warrick*, a SEPTA bus discharged five-year old Julian Warrick (Julian) and his eleven-year-old brother near the dangerous intersection of 33rd and Spring Garden Streets in Philadelphia, which was not the regular bus stop. The bus blocked the children from view of the cars travelling on Spring Garden Street. Julian began crossing the street, when an ambulance passed, hitting him. He died the next day from the injuries sustained as a result of the accident. Lisa Warrick (Warrick), the administratix of Julian's estate, filed suit against SEPTA, the ambulance driver, and the ambulance corporate entities. SEPTA moved for summary judgment, asserting entitlement to sovereign immunity, pursuant to 42 Pa.C.S. §§ 8521, *et seq.* Warrick countered that the vehicle exception to sovereign immunity, codified at 42 Pa.C.S. § 8522(b)(1), applied and rendered SEPTA liable.[1]

The trial court granted summary judgment in favor of SEPTA and the Commonwealth Court affirmed without dissent. *Warrick v. Pro Cor Ambulance, Inc.*, 709 A.2d 422 (Pa.Cmwlth.1997). The Commonwealth Court reasoned that "Pennsylvania caselaw limits injuries caused by the operation of a vehicle to those injuries resulting from the actual movement of the vehicle or a moving part of the vehicle." *Id.* at 427. We granted allocatur to determine "whether the decedent's injuries were the result of the operation of a SEPTA bus, thus making the motor vehicle exception to sovereign immunity applicable." *Warrick v. Pro Cor Ambulance, Inc.*, 552 Pa. 384, 715 A.2d 430 (1998) (*per curiam* Order granting

[1] In relevant part, the vehicle exception to sovereign immunity contains the exact same language as the vehicle exception to governmental immunity.

the Petition for Allowance of Appeal). After hearing oral argument in *Warrick,* a majority of this Court issued a *per curiam* Order, affirming the Order of the Commonwealth Court.

I dissented from the *per curiam* Order, reasoning as follows:

The determination that the motor vehicle exception is limited to an injury that results from "the movement of the bus or by any moving part of the bus" is much too narrowly drawn. The process of operating a vehicle encompasses more than simply moving the vehicle. When a person "operates" a vehicle, he makes a series of decisions and actions, taken together, which transport the individual from one place to another. The decisions of where and whether to park, **where and whether to turn,** whether to engage brake lights, whether to use appropriate signals, whether to turn lights on or off, and the like, **are all part of the "operation" of a vehicle.**

*Warrick,* 739 A.2d at 128 (emphasis added). While I recognize that this position failed to garner a majority of the Court in *Warrick,* it remains my position. As applied to the case *sub judice,* the Regesters presented evidence to the trial court that the Longwood ambulance driver failed to follow the directions that the Regesters provided. As following directions inherently implicates, at the very least, the decision of where and whether to turn, it constitutes an act in the operation of a motor vehicle. Accordingly, I believe that the Commonwealth Court erred in affirming summary judgment in favor of Longwood.

Justice NIGRO joins this concurring and dissenting opinion.