Roxanne Brown-Boyd, Executrix of    :
the Estate of Brenda Watts    :
          :
      v.             : No. 1167 C.D. 2022
                     : Argued: April 9, 2024
Southeastern Pennsylvania    :
Transportation Authority and    :
Sharon Gonzales,           :
             Appellants   :

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE WALLACE                       FILED: July 15, 2024

Southeastern Pennsylvania Transportation Authority and Sharon Gonzales (Gonzales) (collectively, SEPTA) appeal from the order dated September 22, 2022, of the Court of Common Pleas of Philadelphia County (Common Pleas), which denied their motion for summary judgment in favor of Roxanne Brown-Boyd (Brown-Boyd), Executrix of the Estate of Brenda Watts (Watts). Common Pleas denied summary judgment because it concluded Brown-Boyd's negligence action fell within the vehicle exception to sovereign immunity at Section 8522(b)(1) of the Judicial Code, 42 Pa.C.S. § 8522(b)(1).[1] After careful review, we affirm.

---

[1] Sections 8521-27 of the Judicial Code, 42 Pa.C.S. §§ 8521-27, are commonly known as the Sovereign Immunity Act.

## I. Background

This case involves injuries Watts allegedly suffered on September 30, 2019, while attempting to exit a public bus that Gonzales was driving. Reproduced Record (R.R.) at 12a. Watts was 67 years old at the time and suffering from multiple myeloma, a form of cancer that weakened her bones and left her susceptible to fractures "with very minimal trauma." *Id.* at 10a-12a, 401a. Watts entered the bus using a walker. *Id.* at 12a. According to Watts, she decided to exit the bus several minutes later and asked Gonzales to lower the handicap ramp. *Id.* at 13a. Gonzales refused, compelling Watts to exit by placing her walker outside the bus door and stepping down. *Id.* When Watts attempted to step down with her right leg, her left leg "twisted in an oblique manner," resulting in a fracture to her left femur. *Id.* In addition, Watts used "her arms to support her full weight to fully step off the bus," resulting in a fracture to her left humerus. *Id.* Watts was taken to a hospital, where she underwent surgery for her injuries.[2] *Id.*

Watts filed a praecipe for writ of summons on November 12, 2020, followed by a complaint on December 21, 2020. SEPTA responded with preliminary objections, and Watts filed an amended complaint on February 15, 2021. Watts alleged, pertinently, that Gonzales stopped the bus at an unsafe distance from the curb. R.R. at 13a, 17a-21a. She alleged the position of the bus caused her injuries because she was unable to place her walker down entirely on the road or entirely on the sidewalk, and, "due to her disability and the close proxim[ity] of the [bus's] step to the back of the walker[, she] was unable to move her left leg in order to step down

---

[2] A video of the incident is contained in the record. The video shows Watts stepping down with her right leg while holding onto the bus. Watts does not fall but pauses and leans on her walker, which remains upright, while stepping down with her left leg. After stepping down from the bus, Watts stands with her walker, apparently unable to move, until others assist her to the sidewalk.

in a safe manner." *Id.* Moreover, Watts alleged Gonzales caused her injuries by failing to lower the handicap ramp on the bus. *Id.* Watts acknowledged sovereign immunity protected SEPTA from suit but argued this case fell within the vehicle exception at Section 8522(b)(1), which applies to negligent acts involving "[t]he operation of any motor vehicle in the possession or control of a Commonwealth party." 42 Pa.C.S. § 8522(b)(1).

SEPTA filed preliminary objections to Watts' amended complaint on March 8, 2021, asserting sovereign immunity and challenging Watts' claim for attorney's fees. By order dated April 14, 2021, Common Pleas dismissed Watts' claim for attorney's fees but otherwise overruled the preliminary objections. SEPTA filed an answer with new matter, to which Watts filed a response. Watts passed away on September 13, 2021, and Brown-Boyd filed a praecipe to substitute herself as plaintiff. On August 1, 2022, SEPTA filed a motion for summary judgment, once again asserting sovereign immunity. Further, SEPTA contended Brown-Boyd failed to produce evidence to support her negligence claims. Brown-Boyd filed a response in opposition to the motion for summary judgment on September 1, 2022.

Common Pleas denied SEPTA's motion for summary judgment by order dated September 22, 2022, and SEPTA timely filed a notice of appeal.[3] In its opinion, Common Pleas concluded Brown-Boyd's negligence claim involved the "operation" of a vehicle under Section 8522(b)(1). Common Pleas discussed the Pennsylvania Supreme Court's decision in *Balentine v. Chester Water Authority*, 191 A.3d 799 (Pa. 2018), which interpreted the term "operation" more expansively than it had been in the past. Under *Balentine*, "operation" of a vehicle "reflects a

---

[3] An order denying summary judgment based on immunity is appealable as a collateral order under Rule 313 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 313. *See Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 360-61 (Pa. 2021).

3

continuum of activity, which entails a series of decisions and actions, taken together, which transport the individual from one place to another." *Id.* at 810 (citation and quotation marks omitted). Common Pleas explained, in relevant part, that the decision of "where to and how far away from the curb . . . to stop, kneel, and curb a bus is reasonably related to the decision-making process necessary to safely operate a bus and a part of the continuum of acts" necessary to transport patrons. R.R. at 483a. Common Pleas explained lowering and raising the handicap ramp was also part of the "continuum of acts" and decisions necessary to transport patrons with disabilities. *Id.* at 486a.

On appeal, SEPTA argues (1) Common Pleas misinterpreted the term "operation" in Section 8522(b)(1) and our Supreme Court's discussion of that term in *Balentine*, (2) Common Pleas failed to determine whether Gonzales's alleged actions or inactions caused Watts' injuries and, regardless, Brown-Boyd failed to produce the necessary expert report establishing causation, and (3) Common Pleas applied the incorrect legal standard when ruling on summary judgment and generally misinterpreted or misapplied the evidence.[4]

## II. Discussion

We review Common Pleas' order for an error of law or abuse of discretion. *Balentine*, 191 A.3d at 803 n.3 (citing *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 818 (Pa. 2017)). Summary judgment should be granted "only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and

---

[4] The Pennsylvania Association for Justice has filed an amicus curiae brief supporting Brown-Boyd.

that the moving party is entitled to judgment as a matter of law."[5] *Sellers v. Twp. of Abington*, 106 A.3d 679, 684 (Pa. 2014) (quoting *Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010)). Whether genuine issues of material fact exist is a question of law, "and therefore, on that question our standard of review is *de novo. This means we need not defer to the determinations made by the lower tribunals.*" *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 902-03 (Pa. 2010) (citations omitted). We must review the record, including "all pleadings, as well as any depositions, answers to interrogatories, admissions, affidavits, and expert reports, in a light most favorable to the non-moving party, and we resolve all doubts as to the existence of a genuine issue of material fact against the moving party." *Moon v. Dauphin Cnty.*, 129 A.3d 16, 19 (Pa. Cmwlth. 2015) (quoting *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (Pa. 2009)).

The Commonwealth and its agencies, officials, and employees are generally immune from suits for damages when acting within the scope of their duties. *Log*

---

[5] Although case law indicates summary judgment may "only" be granted if no genuine issues of material fact exist, Rule 1035.2 of the Pennsylvania Rules of Civil Procedure provides two circumstances where summary judgment is appropriate:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> > (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
> >
> > (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.Civ.P. 1035.2.

*Cabin Prop., LP v. Pa. Liquor Control Bd.*, 276 A.3d 862, 870 (Pa. Cmwlth. 2022) (*en banc*) (citing *Stackhouse v. Pa. State Police*, 892 A.2d 54, 58 (Pa. Cmwlth. 2006); Pa. Const. art. I, § 11), *aff'd sub nom. MFW Wine Co., LLC v. Pa. Liquor Control Bd.*, ___ A.3d ___ (Pa., Nos. 75-76 MAP 2022, filed July 2, 2024). The Judicial Code lists exceptions to sovereign immunity, which apply to "damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity." 42 Pa.C.S. § 8522(a). The vehicle exception, which is at the heart of this dispute, appears at Section 8522(b)(1):

> **(b) Acts which may impose liability.--**The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
>
>> **(1) Vehicle liability.--**The operation of any motor vehicle in the possession or control of a Commonwealth party. As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

42 Pa.C.S. § 8522(b)(1).[6]

In its first issue, SEPTA argues Common Pleas misinterpreted the term "operation" in Section 8522(b)(1) and our Supreme Court's discussion of that term in *Balentine*. To understand SEPTA's argument, we begin with a brief discussion

---

[6] Section 8501 of the Judicial Code defines a "Commonwealth party" as "[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa.C.S. § 8501. SEPTA is a "Commonwealth party" for purposes of sovereign immunity. *Se. Pa. Transp. Auth. v. Holmes*, 835 A.2d 851, 854 (Pa. Cmwlth. 2003) (citing *Feingold v. Se. Pa. Transp. Auth.*, 517 A.2d 1270 (Pa. 1986)).

of *Love v. City of Philadelphia*, 543 A.2d 531 (Pa. 1988). In *Love*, a disabled woman fell while exiting a van owned by the City of Philadelphia. *Id.* at 531. Our Supreme Court interpreted the vehicle exception to governmental immunity at Section 8542(b)(1) of the Judicial Code, 42 Pa.C.S. § 8542(b)(1), which similarly requires "[t]he operation of any motor vehicle." The Court concluded the woman's injury did not fall within the exception because "[g]etting into or alighting from a vehicle are merely acts ancillary to the actual operation of that vehicle." *Love*, 543 A.2d at 533. The Court explained: "to operate something means to actually put it in motion. Merely preparing to operate a vehicle, or acts taken at the cessation of operating a vehicle are *not* the same as actually operating that vehicle." *Id.* (emphasis in original).

Our Supreme Court decided *Balentine* just over 30 years later. *Balentine* involved a contractor who was working near a parked Chester Water Authority vehicle, which was struck from behind by another vehicle and moved forward, fatally injuring the contractor. 191 A.3d at 802. The contractor's widow filed a lawsuit against Chester Water Authority, among others, alleging it negligently parked the vehicle. *Id.* at 807. The Court concluded the widow's negligence claim fell within the vehicle exception to governmental immunity at Section 8542(b)(1). *Id.* at 810. The Court overruled *Love*, explaining its requirement that a vehicle must be in motion to be "operated" had "impeded the development of consistent and logical case law." *Id.* at 808. In its place, the Court adopted the definition of "operation" from Justice Newman's dissent in *Warrick v. Pro Cor Ambulance, Inc.*, 739 A.2d 127 (Pa. 1999):

> The process of operating a vehicle encompasses more than simply moving the vehicle. When a person "operates" a vehicle, he makes a series of decisions and actions, taken together, which transport the

individual from one place to another. The decisions of where and whether to park, where and whether to turn, whether to engage brake lights, whether to use appropriate signals, whether to turn lights on or off, and the like, are all part of the "operation" of a vehicle.

. . .

The term "operation" reflects a continuum of activity, the boundaries of which this Court should define. "Operation" does not mean simply moving forward or backwards, but instead includes the decision making process that is attendant to moving the vehicle. Had the legislature intended that recovery was permissible only when the vehicle was actually in motion, the legislature would not have used a word that implies a process, such as the term "operation." Moreover, the term "operation" of a motor vehicle occurs in other statutory provisions and in those cases, we have not required that the term "operation" means that the automobile actually be in motion. For example, in the context of the offense of driving under the influence (DUI), to find that a motor vehicle is in operation requires evidence that the driver was in actual physical control of the vehicle, but not that the vehicle was actually "in motion."

*Balentine*, 191 A.3d at 809 (quoting *Warrick*, 739 A.2d at 128-29 (Newman, J., dissenting)) (citations omitted).[7]

SEPTA advances two lines of reasoning for why the vehicle exception to sovereign immunity should not apply under the facts of this case, despite *Balentine's* more expansive definition of "operation."  SEPTA argues *Love* has not been entirely overruled and remains good law to the extent that ingress and egress from a parked vehicle is not "operation" of that vehicle.  SEPTA's Br. at 19-22.  Further, SEPTA

---

[7] In *Warrick*, a public bus dropped two children off at the wrong bus stop, near a dangerous intersection.  739 A.2d at 127.  The bus prevented the children from seeing approaching traffic as they crossed the street.  *Id.*  A passing ambulance hit one of the children, inflicting fatal injuries.  *Id.* at 127-28.  Justice Newman emphasized that the purpose of a bus was to pick up and drop off passengers, explaining: "Because the driver is carrying out a necessary function to the operation of the bus when, along his route, he stops to let his passengers off, he must therefore have the corresponding duty to stop in a safe location." *Id.* at 128-29.

argues *Balentine* did not disturb prior case law holding that the failure to use a vehicle's attachments, like a handicap ramp, is not "operation." *Id.* at 22-26.

Initially, SEPTA cites then-Justice, later Chief Justice, Baer's concurring opinion in *Balentine* for the proposition that *Love* has not been entirely overruled.[8] SEPTA's Br. at 21. SEPTA argues Justice Baer's concurrence is "informative" because it demonstrates that the majority opinion in *Balentine* "did not address the holding in *Love* 'that ingress and egress from a parked vehicle does not constitute 'operation'" but focused on its "gratuitous dicta" that "unnecessarily equates movement and operation." *Id.* (quoting *Balentine*, 191 A.3d at 812 (Baer, J., concurring)).

We disagree with SEPTA's characterization. In his concurring opinion, Justice Baer acknowledged *Love* improperly equated "operation" with "movement," but he considered this language to be mere dicta. *Balentine*, 191 A.3d at 811 (Baer, J., concurring). He believed *Love* decided, correctly, the narrow issue of whether "[g]etting into or alighting from a vehicle are merely acts ancillary to the actual operation of that vehicle" and, thus, acts for which there is no exception to sovereign immunity. *Id.* (quoting *Love*, 543 A.2d at 533). The Majority in *Balentine* expressly overruled *Love*, explaining it was "wrong in principle and therefore properly abandoned." *Id.* at 810 n.5. Because *Balentine* overruled *Love*, it must be inferred that the Supreme Court did not agree with Justice Baer that egress and ingress are acts "merely ancillary" to operation.

In addition, SEPTA argues a vehicle is not in operation "when the sovereign is not actively operating an attachment to the vehicle." SEPTA's Br. at 22. SEPTA largely relies on cases decided before *Balentine*, which in turn relied on *Love's*

---

[8] Justice Donohue joined Justice Baer's concurring opinion.

requirement that a vehicle must be in motion for "operation" to occur. *See id.* at 23 (citing *Sonnenberg v. Erie Metro. Transit Auth.*, 586 A.2d 1026 (Pa. Cmwlth. 1991); *Mannella ex rel. Mannella v. Port Auth. of Allegheny Cnty.*, 982 A.2d 130 (Pa. Cmwlth. 2009); *Royal v. Se. Pa. Transp. Auth.*, 10 A.3d 927 (Pa. Cmwlth. 2010)). SEPTA places particular reliance on *Royal*, which involved the failure to lower a public bus so that a passenger with a cane could exit. 10 A.3d at 928. This Court cited *Love*, among other cases, asserting that the vehicle exception did not apply because the bus was stopped "and all of its parts and attachments were motionless. No movement of the bus, part of the bus, or attachment to the bus caused [the plaintiff's] injury." *Id.* at 931. *Royal* displays the same "emphasis on motion" that our Supreme Court rejected in *Balentine*, 191 A.3d at 810, and, therefore, does not control the outcome of this case.

SEPTA also cites *Podejko v. Department of Transportation*, 236 A.3d 1216 (Pa. 2020) (*en banc*), which this Court decided after *Balentine*. In *Podejko*, a fire department diverted water from a flooded road to a nearby property using a "pumper truck" and allegedly damaged a preschool. *Id.* at 1217. The trial court concluded the pumper truck was not in "operation" at the time it was diverting water because it was not being used to transport people from one place to another. *Id.* at 1223-24. This Court rejected the trial court's reasoning, as follows:

> The trial court's interpretation that the Pumper Truck's operation is limited to decisions [related to] transporting an individual from one place to another is too narrow in this particular case. Based upon *Balentine*, the courts cannot ignore the purpose for which the vehicle is operated[.] Here, the purpose of the Fire Department's Pumper Truck was not only to transport firefighters to where they were needed, but its parts were also expressly designed to disperse water onto fires or, in this case, to remove flood waters. Because the Fire Department controlled the parts of the Pumper Truck that removed the water from

10

> [the road] and redirected it from the Pumper Truck's rear, the Fire Department operated the vehicle.

*Id.* at 1224-25 (citations, emphasis, footnote, and quotation marks omitted). Thus, *Podejko* stands for the proposition that a vehicle may be "operated" even when it is not being used to transport people, particularly when the vehicle's purpose extends beyond providing transportation. *Podejko* did not hold that a vehicle's attachments must be "actively operat[ed]" as SEPTA suggests. *See* SEPTA's Br. at 22.

This leaves us with the plain language of Section 8522(b)(1) and our Supreme Court's discussion in *Balentine*. As summarized above, the vehicle exception applies to "damages arising out of a negligent act." 42 Pa.C.S. § 8522(a). The exception also represents one of several types of "acts by a Commonwealth party" that may result in liability. 42 Pa.C.S. § 8522(b). Although Section 8522 references the "acts" of a Commonwealth party, the Judicial Code defines an "act" as including "a failure to act." 42 Pa.C.S. § 8501. Our Supreme Court has recognized, for example, that both acts and failures to act fall within the real property exception to governmental immunity, 42 Pa.C.S. § 8542(b)(3). In *Brewington for Brewington v. City of Philadelphia*, 199 A.3d 348, 355 (Pa. 2018), the Court held the real property exception applied where a school failed to install safety mats on a concrete gym wall, explaining that "neither the terms of the [statute], nor any reasonable construction of its real estate exception, requires an affirmative act on the part of the local agency."[9]

Consistent with Section 8522(b)(1)'s plain language and the discussion in *Brewington*, our Supreme Court contemplated in *Balentine* that "operation" of vehicle would include both acts and failures to act. Under *Balentine*, "operation" of a vehicle includes decisions like "whether to engage brake lights, whether to use

---

[9] The Court decided *Balentine* on August 21, 2018, and *Brewington* on December 28, 2018.

11

appropriate signals, and whether to turn lights on or off." 191 A.3d at 810 (quoting *Warrick*, 739 A.2d at 128 (Newman, J., dissenting)). We can discern no meaningful distinction between the negligent failures to act our Supreme Court listed in *Balentine*, like failing to use lights or turn signals, and the alleged failure to lower the handicap ramp in this case. For these reasons, we reject SEPTA's argument that failure to engage attachments, such as a handicap ramp, cannot constitute the "operation" of a public bus.

SEPTA argues in its second issue that Common Pleas failed to determine whether Gonzales's operation of the bus caused Watts' injuries. SEPTA suggests Watts may not have been injured while exiting the bus, highlighting her history of falls and the presence of bystanders who assisted her after she exited. SEPTA's Br. at 30-32. In addition, SEPTA argues Brown-Boyd failed to produce the necessary expert report establishing causation. SEPTA acknowledges Brown-Boyd produced an expert report from Saqib Rehman, M.D. (Dr. Rehman) but argues the report is inadequate because Dr. Rehman did not opine on when or how Watts' injuries occurred. *Id.* at 29-31.

Our review of the record reveals evidence establishing a causal connection between Gonzales's operation of the bus and Watts' injuries. Medical documentation indicates Watts had no "acute facture" to her left leg after falling in August 2019, R.R. at 128a-36a, and was discharged from a physical rehabilitation facility on or about September 26, 2019, *id.* at 139a-51a. However, Watts' femur was broken after attempting to exit the bus only four days later, on September 30, 2019. *Id.* at 168a-76a. During her deposition,[10] Watts explained she asked Gonzales to lower the handicap ramp, and Gonzales responded she did not "put the ramp down

---

[10] SEPTA indicates Watts passed away before her deposition could be completed. *See* SEPTA's Br. at 6.

12

unless it's a wheelchair thing." *Id.* at 335a. Watts explained she then attempted to exit the bus when "my whole leg, my whole foot went like this. And I was in so much pain, and screaming. . . . It was so painful. My leg just went like this. It went to the right." *Id.* at 336a.

SEPTA's insistence that Brown-Boyd failed to produce an expert report is also misplaced. SEPTA relies in part on our Supreme Court's decision in *Hamil v. Bashline*, 392 A.2d 1280 (Pa. 1978). In *Hamil*, our Supreme Court recognized the cause of an injury may sometimes be inferred by the circumstances of an accident, but expert testimony is generally required when "the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson." 392 A.2d at 1285 (collecting cases); *see also Polett v. Pub. Commc'ns, Inc.*, 126 A.3d 895, 931 (Pa. 2015). Brown-Boyd produced Dr. Rehman's report, which explained how the bus incident would have caused Watts' injury to a reasonable degree of medical certainty. R.R. at 399a. Dr. Rehman reviewed Watts' medical records and the video of the September 30, 2019 incident, explaining as follows:

> Review of the written medical records indicates that [Watts] fell down the steps while getting off [the bus]. My review of the video shows that she did not quite fall to the ground, but stumbled and used her walker to support herself, and she was unable to take any steps with the walker, despite another person trying to help her. The walker did stop her from going to the ground. . . .
>
> . . . .
>
> Given Ms. Watts' underlying condition of multiple myeloma, she was unfortunately susceptible to pathological fractures. That is, her cancer had weakened her bones and allowed them to fracture with very minimal trauma. **This is consistent with the clinical history in the medical record, and a viewing of the SEPTA video confirms this. That is, a patient without bone cancer like multiple myeloma would**

13

**not sustain a femoral fracture (and likely not a humerus fracture), from stumbling the way Ms. Watts did.** A patient with osteoporosis could fracture a hip with a fall directly onto the hip from a standing position. A patient with normal healthy bone would require much more trauma, such as a fall down the stairs or a motor vehicle collision to sustain a femur fracture.

R.R. at 399a-401a (emphasis added). We reject SEPTA's contention that Brown-Boyd's evidence of causation, including an expert report, was insufficient to get to the jury on the issue of causation.

SEPTA's third and final issue is actually several issues combined. SEPTA argues it filed its motion for summary judgment under Rule 1035.2(2) of the Pennsylvania Rules of Civil Procedure, which applies when "an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.Civ.P. 1035.2(2). SEPTA contends Common Pleas incorrectly decided its motion under Rule 1035.2(1), which applies "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report." Pa.R.Civ.P. 1035.2(1). SEPTA maintains Brown-Boyd "failed to adduce admissible evidence to establish causation or . . . a statutory exception to immunity" under Rule 1035.2(2). SEPTA's Br. at 33. Even applying Rule 1035.2(1), SEPTA continues, there are no genuine issues of material fact relevant to its immunity from suit. *Id.*

SEPTA also argues Common Pleas denied summary judgment based on "unsupported allegations and arguments, irrelevant facts, inadmissible hearsay, mischaracterization of testimony, and speculation," rather than record evidence. SEPTA's Br. at 34. SEPTA challenges the factual summary in Common Pleas'

opinion, arguing Common Pleas inaccurately describes the circumstances of Watts' injury. *Id.* at 35-36. SEPTA contends there is no evidence that Gonzales stopped the bus at an unsafe distance from the curb, or that the position of the bus relative to the curb caused Watts' injury. *Id.* at 36-39. Further, SEPTA contends Common Pleas improperly focused on bus driver training and policies, particularly because it discussed "whether Gonzales proactively assisted or provided aid" after Watts was injured. *Id.* at 40-41.

Because we have already rejected SEPTA's arguments regarding causation and sovereign immunity, its assertion that Common Pleas should have granted summary judgment for those reasons fails. Moreover, we reiterate that our standard of review in these circumstances is *de novo*. *Weaver*, 926 A.2d at 902-03; *see also SEDA-COG Joint Rail Auth. v. Carload Express, Inc.*, 238 A.3d 1225, 1232 (Pa. 2020). This means we do not defer to Common Pleas' determinations, and any inaccuracies or flaws in Common Pleas' reasoning do not require that we reverse the order on appeal, so long as our independent review supports its decision. Based on our discussion above, Brown-Boyd produced sufficient evidence of facts essential to her cause of action under Rule 1035.2(2), and in turn established the existence of genuine issues of material fact under Rule 1035.2(1). This evidence includes Watts' deposition testimony, indicating Gonzales refused to lower the handicap ramp and compelled Watts to exit the bus by stepping down onto the street, and Dr. Rehman's expert report, which connects Watts' attempt to exit the bus with her injuries. R.R. at 335a, 401a.

### III. Conclusion

Brown-Boyd's negligence claim falls within the vehicle exception at Section 8522(b)(1). Gonzales was "operating" the bus when she stopped to allow Watts to

exit and, allegedly, refused to lower the handicap ramp. *See Balentine*, 191 A.3d at 809 (quoting *Warrick*, 739 A.2d at 128-29 (Newman, J., dissenting)). Brown-Boyd also produced sufficient evidence, including evidence of causation, to survive summary judgment. Accordingly, we affirm Common Pleas' order dated September 22, 2022.

 

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Roxanne Brown-Boyd, Executrix of  :
the Estate of Brenda Watts          :
                                     :
           v.                : No.  1167 C.D. 2022
                                     :
Southeastern Pennsylvania       :
Transportation Authority and    :
Sharon Gonzales,             :
                Appellants  :

# **O R D E R**

   **AND NOW**, this 15th day of  July 2024, the order of the Court of Common Pleas of Philadelphia County, dated September 22, 2022, is **AFFIRMED**.


                                  _____

                                  STACY WALLACE, Judge